**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                  No. 96-4380

DONALD RAY MOORE,
Defendant-Appellant.

Appeal from the United States District Court for the
Western District of North Carolina, at Statesville.
Richard L. Voorhees, Chief District Judge.
(CR-94-30-5)

Submitted: October 14, 1997

Decided: November 18, 1997

Before HALL, HAMILTON, and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Lawrence W. Hewitt, Richard B. Fennell, JAMES, McELROY &
DIEHL, P.A., Charlotte, North Carolina, for Appellant. Mark T. Cal-
loway, United States Attorney, Brian L. Whisler, Assistant United
States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Donald Ray Moore appeals from his convictions on seven counts of conspiracy, mail fraud, and wire fraud, 18 U.S.C.§§ 371, 1341, 1343 (1994), for which he was sentenced to fifty months on each count, to run concurrently. Moore claims that the district court abused its discretion by permitting cross-examination regarding his prior instances of misconduct and that the evidence was insufficient to sustain the guilty verdicts. Finding no error, we affirm.

Moore was indicted along with George Landen for operating a fraudulent investment and loan scheme in North Carolina. Viewed in the light most favorable to the Government, see Glasser v. United States, 315 U.S. 60, 80 (1942), the facts are as follows. Moore created an organization known as the International Society of Investors (ISI) through which he mailed a large number of promotional packages to individuals with poor credit histories. The materials offered recipients the opportunity to join ISI for $1500. In return, they were promised 100 free shares in a non-existent international bank, along with low interest loans and high interest rates on checking and savings accounts. ISI members wishing to obtain a loan were required to first deposit $250 with the "bank." Potential investors were assured that their accounts were insured by the "Fidelity Assurance Guaranty, Inc.," a non-existent entity devised by Moore and Landen. The promotional materials included an audio cassette tape which represented (falsely) that Moore was a millionaire and that Landen was a successful financial publisher.

Moore and Landen also published a monthly newsletter entitled "The Society Investor" which misrepresented that the "bank" was based in the Republic of Nauru and managed from an office in Calgary, Alberta, by a John Shannon, Vice President of Pioneer International Holdings. The "bank" did not exist and"John Shannon" was a

2

fictional character which Moore admitted to devising. The Calgary address was actually a mail drop where mail was picked up and forwarded, via Federal Express, to Moore in North Carolina. Telephone calls to the Calgary "office" were automatically forwarded to Moore's office as well. In 1991, after Canadian authorities seized ISI's Calgary bank account, Moore relocated the "bank" to Grenada, West Indies.

More than 270 individuals responded to the promotional materials by submitting their $1500 membership fee. Payments from potential borrowers and investors totaled over $1.1 million, which Moore and Landen deposited into bank accounts for their personal use.

At Moore's trial, the government gave notice of its intent to introduce evidence of cease and desist orders issued by the Kansas Securities Commission (1986) and the United States Postal Service (1987).* The district court allowed the government to cross-examine Moore about these prior instances but did not allow admission of any evidence pertaining to either incident. Moore claims that this testimony "gave the impression that previous judicial bodies had found defendant guilty" of the prior conduct at issue. (Brief of Appellant at 4).

This court reviews the district court's evidentiary rulings for abuse of discretion. United States v. Hassan-El, 5 F.3d 726, 731 (4th Cir. 1993). Federal Rule of Evidence 608(b) prescribes the manner of cross-examining a witness by showing his "prior bad acts," and provides, in part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness.

_____

*The 1986 order arose from Moore's activities selling securities in his "Business Opportunity Club." The 1987 order issued by the Postal Service related to a scheme in which Moore was offering, by mail, low interest loans of up to $1 million.

3

The rule recognizes that the trial court must have discretion to apply the overriding safeguards of Rule 403 (excluding evidence if its probative value is substantially outweighed by dangers of prejudice, confusion, or delay). Rule 608 authorizes inquiry into instances of misconduct which are "clearly probative of truthfulness or untruthfulness," such as perjury, fraud, swindling, forgery, bribery, and embezzlement. See United States v. Leake, 642 F.2d 715, 718 (4th Cir. 1981). Applying these standards, we find that the district court did not abuse its discretion by allowing the government to cross-examine Moore regarding his past similar fraudulent conduct.

Second, Moore claims that the evidence was insufficient to support the guilty verdict as to any of the charges. A conviction must be affirmed if there is substantial evidence, viewed in the light most favorable to the government, to support a finding of guilt. See Glasser, 315 U.S. at 80. Circumstantial and direct evidence are both considered, and the government is given the benefit of all reasonable inferences from the facts proven to the facts sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

To prove mail fraud, 18 U.S.C. § 1341, the government had to show, beyond a reasonable doubt, that Moore (1) engaged in a scheme to defraud, (2) by using the mails, (3) in furtherance of the scheme. See United States v. Locklear, 829 F.2d 1314, 1318 (4th Cir. 1987). To prove wire fraud, 18 U.S.C. § 1343, the government had to show (1) the existence of a scheme to defraud, and (2) the use of interstate wire communications to facilitate the scheme. See United States v. ReBrook, 58 F.3d 961, 966 (4th Cir. 1995), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3332 (Nov. 6, 1995) (No. 95-6317). The term "scheme to defraud" means "any scheme to deprive another of money or property by means of false or fraudulent pretenses, misrepresentations or promises." See Carpenter v. United States, 484 U.S. 19, 27 (1987). The evidence presented at Moore's trial as summarized above clearly establishes his guilt as to each of these elements.

Finally, Moore claims that the evidence was insufficient to support the conspiracy conviction because Landen's testimony failed to show that he and Moore "had the common purpose alleged in the indictment." Rather, he claims that "the evidence showed at most an associ-

4

ation between Landen and [Moore]." (Brief of Appellant at 6). We disagree.

To sustain a conspiracy conviction under 18 U.S.C.§ 371, the government must prove (1) an agreement between two or more people to commit a crime, and (2) an overt act in furtherance of the conspiracy. See United States v. Chorman, 910 F.2d 102, 109 (4th Cir. 1990). The existence of a "tacit or mutual understanding" between conspirators is sufficient evidence of a conspiratorial agreement. Id. Such proof need not be direct, but may be inferred from circumstantial evidence. See United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc), cert. denied, ___ U.S. #6D 6D6D#, 65 U.S.L.W. 3586 (Feb. 24, 1997) (No. 96-6868).

Landen's testimony established that he knowingly participated in the promotional scheme along with Moore. The government presented promotional tapes of conversations between Moore and Landen in which they discussed various aspects of the off-shore banking scheme. Landen testified that he had pled guilty to conspiracy and that he knew that certain representations on the tapes were inaccurate and "wrong to do." Accordingly, the evidence was sufficient for a jury to find that Moore and Landen conspired in violation of § 371.

Moore's conviction is therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED